**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X     **Case No. 18-CV-0254**
GAIL GEORGE,

                         Plaintiff,     **COMPLAINT**

       - against -
                                  **PLAINTIFF DEMANDS**
                                  **A TRIAL BY JURY**
ALTICE USA, INC.,
SERENA ROMAN, *Individually*,
PATRICIA TURTELL, *Individually*, and
ERIC HOFFMAN, *Individually*,

                        Defendants.
-------------------------------------------------------------------------X

       Plaintiff, GAIL GEORGE, by her attorneys, LAW OFFICE OF YURIY MOSHES, P.C.,

hereby complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1.      Plaintiff complains pursuant to the <u>Americans with Disabilities Act of 1990</u>, 42 U.S.C. §

      12101, *et seq*. ("ADA") and the <u>New York City Human Rights Law</u>, New York City

      Administrative Code § 8-502(a), *et. seq.* ("NYCHRL")*,* and seeks damages to redress the

      injuries Plaintiff has suffered as a result of being **Denied a Reasonable**

      **Accommodation**, **Discriminated against,** and **Terminated** by her employer solely due

      to her **Disability (Meniere's Disease)** and in **Retaliation** for requesting a reasonable

      accommodation.

## JURISDICTION AND VENUE

2.      Jurisdiction of this Court is proper under 42 U.S.C. §12101 *et. seq.*, and 28 U.S.C. §§

      1331 and 1343.

3.     The Court has supplemental jurisdiction over the claims of Plaintiff brought under state law pursuant to 28 U.S.C. §1367.

4.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because the acts complained of occurred therein.

## PROCEDURAL PREREQUISITES

5.     Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

6.     Plaintiff received a Notice of Right to Sue from the EEOC, dated November 29, 2017, with respect to the herein charges of discrimination.  A copy of the Notice is annexed hereto.

7.     This Action is being commenced within ninety (90) days of receipt of said Right to Sue.

## PARTIES

8.     That at all times relevant hereto, Plaintiff GAIL GEORGE ("GEORGE") was a resident of the State of New York and the County of Bronx.

9.     That at all times relevant hereto, Defendant ALTICE USA, INC. ("ALTICE") was and is foreign business corporation, duly existing pursuant to, and by virtue of, the laws of the State of Delaware, with its principal place of business located at 1111 Stewart Avenue, Bethpage, New York 11714.

10.    That at all times relevant hereto, Plaintiff GEORGE was a full-time employee of Defendant ALTICE.

11.    That at all times relevant hereto, Plaintiff GEORGE worked at Defendant ALTICE's office located at 2100 Bartow Avenue, Bronx, New York 10475 ("Bronx Office").

12.    That at all times relevant hereto, Defendant SERENA ROMAN ("ROMAN") was an employee of Defendant ALTICE, holding the position of "Manager – HR Generalist."

13.    That at all times relevant hereto, Defendant ROMAN was Plaintiff GEORGE's supervisor and/or had supervisory authority over Plaintiff GEORGE.

14.    That at all times relevant hereto, Defendant PATRICIA TURTELL ("TURTELL") was an employee of Defendant ALTICE, holding the position of "Disability Specialist."

15.    That at all times relevant hereto, Defendant TURTELL was Plaintiff GEORGE's supervisor and/or had supervisory authority over Plaintiff GEORGE.

16.    That at all times relevant hereto, Defendant ERIC HOFFMAN ("HOFFMAN") was an employee of Defendant ALTICE, holding the position of "Human Resources Manager – Generalist."

17.    That at all times relevant hereto, Defendant HOFFMAN was Plaintiff GEORGE's supervisor and/or had supervisory authority over Plaintiff GEORGE.

18.    That at all times relevant hereto, Defendant ALTICE, Defendant ROMAN, Defendant TURTELL, and Defendant HOFFMAN are collectively referred to herein as "Defendants."

## MATERIAL FACTS

19.    On or about May 5, 1995, Plaintiff GEORGE began working for Defendants as a "Customer Service Representative" in Defendants' Bronx Office, earning approximately $9.00 per hour.

20.    As a "Customer Service Representative," Plaintiff GEORGE was responsible for resolving customer billing inquiries, disputes, payments, change of service requests, and

general technical questions through the phone, internet chat, and email.

21.    Throughout Plaintiff GEORGE's employment, Plaintiff GEORGE was an exemplary employee and always received compliments for her work performance.

22.    In fact, in or around 1999, as a result of Plaintiff GEORGE's excellent work performance, Defendants promoted Plaintiff GEORGE to the position of "Customer Service Team Leader."

23.    As a "Customer Service Team Leader," Plaintiff GEORGE was also responsible for responding via internet chat and email to all inquiries and questions from other "Customer Service Representatives."   Each week, Defendants distributed a rotating schedule whereby each "Customer Service Team Leader" was essentially on-call for approximately nine (9) hours each week during which they were responsible for responding to all inquires via internet chat from "Customer Service Representatives."

24.    Furthermore, throughout Plaintiff GEORGE's employment, she also received numerous raises in pay, ultimately earning approximately $33.00 per hour.

25.    However, everything changed when Plaintiff GEORGE requested a reasonable accommodation for her disability (Meniere's Disease).

26.    While Plaintiff GEORGE requested a reasonable accommodation for this disability, Defendants not only wholly refused to provide Plaintiff GEORGE with any accommodation but also terminated Plaintiff GEORGE's employment solely due to her disability and in retaliation for requesting an accommodation.

27.    By way of background, in or around 2011, Plaintiff GEORGE was diagnosed with Meniere's disease.   Meniere's disease (MD) is a disorder of the inner ear that is characterized by episodes of feeling like the world is spinning (vertigo), ringing in the

ears (tinnitus), hearing loss, and a fullness in the ear.

28.     On or about May 2, 2016, as a result of her Meniere's disease, Plaintiff GEORGE was
        forced to take a medical leave of absence pursuant to the Family and Medical Leave Act
        ("FMLA").  According to the FMLA form completed by Plaintiff GEORGE's doctor, W.
        Roy Michaelis, MD, Plaintiff GEORGE's Meniere's disease causes "dizziness, vertigo,
        nausea, vomiting, [and] hearing impairment rendering her unable to work in any capacity.
        … After continuous leave completed, [Plaintiff GEORGE] will continue to require
        intermittent leave.  Changing job to one not requiring headphones, such as online
        computer interaction would help with her symptoms."

29.     On or about July 25, 2016, when she was ready to return, Plaintiff GEORGE sent
        Defendant TURTELL an email to which she attached two doctor's notes, one (1) from
        her primary care physician (Dr. Michaelis) and one (1) from an Ear, Nose and Throat
        doctor (Dr. Elizabeth A. Dinces, MD, MS), both clearing Plaintiff GEORGE to return to
        work but again simply reiterating that Plaintiff GEORGE cannot "use headphones due to
        hyperacusis and recruitment.  Needs quiet environment and use of speakerphone with
        volume control for hearing impairment with recruitment.  May need to rest if [she] has a
        vertigo attack."

30.     By requesting permission to use speakerphone rather than headphones, Plaintiff
        GEORGE was requesting an accommodation for her disability.  Plaintiff GEORGE knew
        that using speakerphone instead of headphones posed no undue burden to Defendants, as
        Defendants had at least six (6) vacant offices in which Plaintiff GEORGE could have
        performed all the essential functions of her job through the use of speakerphone.  More
        specifically, there were three (3) vacant offices in the Bronx Office call center and three

(3) more vacant offices in Bronx Office Human Resources, all of which Plaintiff GEORGE could have used to perform her job.

31.   In addition, Plaintiff GEORGE was fully able to perform the essential functions of her job through the use of internet chat and email, without ever having to even speak on the telephone.  In fact, rather than rotate the "internet chat" duties to all the "Team Leaders," Plaintiff GEORGE knew that she could instead take on the role full time.

32.   On or about August 5, 2016, without engaging in the interactive process to try and determine an appropriate accommodation, Defendant ROMAN instead advised Plaintiff GEORGE over the phone that Defendants would not be able to provide her with any accommodation for her disability and that she would instead have to return to her position without any accommodations.

33.   Also on or about August 5, 2016, Plaintiff GEORGE also received a letter from Defendant ROMAN, stating:

> "You also have advised the Company that you are currently unable to return to your existing position as a Team Lead - Customer Support without a reasonable accommodation, which is, 'cannot use headphones due to hyperacusis and recruitment. Needs quiet environment and use of speaker phone with volume control for hearing impairment with recruitment. May need to rest if has a vertigo attack.'  As such, we will provide you with limited additional leave time to explore whether you are qualified and currently able (or will be able in the immediate future) to perform any alternative positions at Altice USA with or without reasonable accommodations (to the extent that such accommodations do not pose an undue hardship to the Company). … You will be placed on a Job Search Accommodation Leave (JSA) as of today, August 5, 2016.  As discussed, this Leave status will continue until such time as it has been determined that you are qualified and selected to perform the essential functions of an alternative position, until it has been established that you are not the selected candidate for any position for which you posted within the first 30 days of the JSA or you otherwise remove yourself from the process. …"

34.     As a result, Defendants forced Plaintiff GEORGE to stay out on a medical leave of absence.  Plaintiff GEORGE was extremely distraught that Defendants were refusing to work with her to determine an appropriate accommodation and instead forcing Plaintiff GEORGE to stay out on an unpaid medical leave of absence to look for "alternative positions."

35.     As such, even though Plaintiff GEORGE continued to call Defendants and plead with them to allow her to return to her position with an accommodation because "the only thing I'm not able to do is use headphones," Defendants refused to even entertain the idea and refused to permit Plaintiff GEORGE to return to her position.  It soon became clear to Plaintiff GEORGE that Defendants were completely unwilling to work with her to explore possible alternative accommodations and seemed to insist that she could not return to work until she was able to perform her job without any accommodation.

36.     However, since Plaintiff GEORGE was desperate to return to work, she began to apply to numerous other positions with Defendants.  For example, in or around October 2016, Plaintiff GEORGE applied, and was interviewed, for a Social Media/Sales position in which Plaintiff GEORGE would never even have to use the telephone.

37.     Unfortunately, on or about October 28, 2016, Defendant HOFFMAN called Plaintiff GEORGE to inform her that she was not being considered for the Social Media/Sales position because she was "just not a good fit," and further, that there were no other available positions to which she could apply.  As a result, Defendant HOFFMAN told Plaintiff GEORGE that her employment was being terminated on November 1, 2016.

38.     Plaintiff GEORGE was absolutely distraught that, without providing any valid reason or justification, Defendants refused to provide her with an accommodation for her disability

7

and then terminated her employment as a result.

39. It is also apparent that Defendants never made any good faith effort to find Plaintiff GEORGE an alternative position within their large organization.

40. **While Plaintiff GEORGE's request could have easily been accommodated, Defendants wholly refused to accommodate Plaintiff GEORGE's disability and instead terminated her employment.**

41. Based on Defendants' discriminatory treatment of Plaintiff GEORGE, as well as the aforementioned suspicious actions, it is clear that Defendants discriminated against, failed to provide an accommodation to, and terminated the employment of, Plaintiff GEORGE solely due to her disability and in retaliation for requesting a reasonable accommodation for her disability.

42. Defendants arbitrarily refused to grant Plaintiff GEORGE this reasonable accommodation, even though it would have posed **no undue burden** to them.

43. It is very clear that Defendants arbitrarily and unlawfully refused to accommodate Plaintiff GEORGE's disability as requested by her doctor.

44. Furthermore, Defendants never even attempted to engage in any interactive process to try and figure out the best way to accommodate Plaintiff GEORGE's disability so that Plaintiff GEORGE could continue her employment with Defendants.

45. Rather than discussing possible alternative ways to accommodate Plaintiff GEORGE's disability, Defendants figured it was easier to simply deny her request and terminate her employment.

46. Plaintiff GEORGE's disability is an impairment that substantially limit one or more of her major life activities within the meaning of §12102(1)(A) of the ADA, including but

not limited to, hearing.

47. Plaintiff GEORGE is a qualified individual who could have performed the essential functions of her employment with a reasonable accommodation as defined by §12111(8) of the ADA.

48. Plaintiff GEORGE felt offended, disturbed, and humiliated by the blatantly unlawful, discriminatory, and retaliatory termination.

49. **But for the fact that Plaintiff GEORGE was disabled and requested a reasonable accommodation for her disability, Defendants would not have terminated her employment.**

50. Plaintiff GEORGE's performance was, upon information and belief, above average during the course of her employment with Defendants.

51. Plaintiff GEORGE has been unlawfully discriminated against, retaliated against, humiliated, and degraded, and as a result, suffers loss of rights, emotional distress, loss of income and earnings.

52. Defendants' actions and conduct were intentional and intended to harm Plaintiff GEORGE.

53. As a result of Defendants' actions, Plaintiff GEORGE feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

54. As a result of the acts and conduct complained of herein, Plaintiff GEORGE has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff GEORGE has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

55. Defendants' conduct has been malicious, willful, outrageous, and conducted with full

knowledge of the law.  As such, Plaintiff GEORGE demands Punitive Damages as against both Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT (Not Against Individual Defendants)

56.   Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

57.   Plaintiff claims Defendant ALTICE violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (*ADA*), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

58.   Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

59.   Defendant ALTICE engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her disability and failing to provide an accommodation for her disability.

60.   As such, Plaintiff has been damaged as set forth herein.

## AS A SECOND CAUSE OF ACTION FOR RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT (Not Against Individual Defendants)

61.     Plaintiff repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

62.     The ADA prohibits retaliation, interference, coercion, or intimidation.

63.     42 U.S.C. § 12203 provides:

   a)   Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

   b)   Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

64.     Defendant ALTICE violated this section as set forth herein.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

65.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

66.     The New York City Administrative Code §8-107(1) provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

67.     Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(1)(a) by discriminating against Plaintiff because of her

11

disability.

## AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

68.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

69.     The New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

70.     Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(7) by discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

71.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

72.     The New York City Administrative Code §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

73.     Individual Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory and retaliatory conduct.

## AS A SIXTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

74.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

75.     The New York City Administrative Code §8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

    a.  An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

    b.  An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

        1.  the employee or agent exercised managerial or supervisory responsibility; or

        2.   the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

        3.   the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

    c.  An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such

employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

76.     Defendants violated the section cited herein as set forth.

## JURY DEMAND

77.     Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A.  Declaring that Defendants engaged in unlawful employment practices prohibited by the ADA and the NYCHRL, in that Defendants discriminated against Plaintiff on the basis of her disability, refused to provide her with an accommodation, and retaliated against Plaintiff for requesting an accommodation;

B.  Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and retaliation and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C.  Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D.  Awarding Plaintiff punitive damages;

E.  Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

F.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and

proper to remedy the Defendants' unlawful employment practices.

Dated: New York, New York
       January 11, 2018

                                      **LAW OFFICE OF**
                                      **YURIY MOSHES, P.C.**

          By:

                                      Alex Umansky, Esq.
                                      *Attorneys for Plaintiff*
                                      322 West 48th Street, 6th Floor
                                      New York, New York 10036
                                      (718) 504-6090
                                      aumansky@mosheslaw.com

15

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Gail George<br>42 Edgecliff Terrace<br>Yonkers, NY 10705 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No.<br><br>520-2017-02585 | EEOC Representative<br>**Mabel Tso,**<br>**Investigator** | Telephone No.<br><br>**(212) 336-3762** |
|---|---|---|

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_____

**Kevin J. Berry,**
**District Director**

November 29, 2017
(Date Mailed)

Enclosures(s)

cc:   Director
      Human Resources
      **ALTICE USA DBA CABLEVISION USA**
      **1111 Stewart Avenue**
      **Bethpage, NY 11714**

Charging Party Attorney:

Jeffrey T. Rosenberg, Esq.
**LAW OFFICE OF YURIY MOSHES PC**
**322 West 48th Street**
**6th Floor**
**New York, NY 10036**